IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MAINE

| | |
|---|---|
| JULIE COTA and WILLIAM COTA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1:15-cv-00486-GZS |
| U.S. BANK, N.A. AS TRUSTEE, and | ) |
| WELLS FARGO HOME MORTGAGE, INC. | ) |
| | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS AND FOR A MORE DEFINITE STATEMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Defendants U.S. Bank National Association ("U.S. Bank"), as Trustee, and Wells Fargo

Bank, N.A., incorrectly identified as Wells Fargo Home Mortgage, Inc. ("Wells Fargo")[1] move,

pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs Julie and William Cota's ("Plaintiffs'")

complaint for failure to state a claim upon which relief may be granted and for a more definite

statement pursuant to Fed. R. Civ. P. 12(e). In support of their motion, U.S. Bank states the

following:

## I.      INTRODUCTION

Plaintiffs seek damages resulting from Defendants' alleged breach of a loan modification

and failed attempt to foreclose on 8 Harrison Avenue, York, Maine (the "Property"). Plaintiffs,

however, are not entitled to the relief they seek because their complaint fails as a matter of law

and fails to put Defendants on notice of their alleged wrongdoing. First, Plaintiffs' claims under

---

[1]     Wells Fargo Home Mortgage, Inc. merged with and into Wells Fargo Bank, N.A. <u>Rabe v. Wells Fargo Bank, N.A.</u>, 616 F. App'x 729, 731 (5th Cir. 2015) ("Wells Fargo Home Mortgage, Inc., which later merged into its parent company, Defendant… Wells Fargo Bank, N.A."); <u>Kenery v. Wells Fargo, N.A.</u>, 2014 WL 4183274, at *3 (N.D. Cal. Aug. 22, 2014) ("Wells Fargo Home Mortgage, Inc. merged into Wells Fargo Bank, N.A. on May 8, 2004, and ceased to exist as a separate entity.").

the Maine Fair Debt Collection Practices Act ("Maine FDCPA") and the Maine Fair Credit Reporting Act ("Maine FCRA") fail because neither statute applies to U.S. Bank or Wells Fargo. Second, Plaintiffs' tort-based claim against Wells Fargo fails as a matter of law because there is no legal duty of care between a mortgagor and a loan servicer.  Third, Plaintiffs' wrongful use of civil proceedings claim, for illegally commencing the prior foreclosure action, fails because Plaintiffs have not (and cannot) allege that Defendants lacked probable cause to bring the proceeding.  Fourth, Plaintiffs' claim under the Maine Unfair Trade Practices Act ("UTPA") against Wells Fargo for unfair servicing practices fails as a matter of law because Wells Fargo is statutorily exempt from the UTPA.  Finally, Plaintiffs' claim for intentional infliction of emotional distress ("IIED") fails because Plaintiffs have not alleged that U.S. Bank or Wells Fargo engaged in extreme and outrageous conduct.

In addition, Plaintiffs' complaint suffers from numerous pleading deficiencies that require this Court to order Plaintiffs to plead a more definite statement under Fed. R. Civ. P. 12(e).  Plaintiffs employ group pleading throughout the complaint, lumping U.S. Bank and Wells Fargo into a singular entity.  This practice makes it impossible for each defendant to be placed on notice of its wrongful conduct. Plaintiffs also fail to allege the necessary elements for a breach of contract claim because they do not allege that they accepted the Wells Fargo's offer in the manner required by Wells Fargo, nor do they allege how Defendants breached a material term of the alleged contract.  Similarly, Plaintiffs do not allege their fraud-based claims with sufficient particularity in accordance with Fed. R. Civ. P. 9(b).  Finally Plaintiffs assert counts that are not defined causes of action.  As a result of these shortcomings, a more definite statement under Fed. R. Civ. P. 12(e) is necessary.  For these reasons, this Court should grant Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with respect to Counts II, III, VIII, IX, X, and XI

and grant Defendants' motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) with respect to Counts I, IV, V, VI, VII, and XII.

## II.    FACTS

On July, 12, 2004, Plaintiffs executed a promissory note payable to Wells Fargo promising to pay $570,000.00 to Wells Fargo.  <u>See</u> Compl. ¶ 8; Ex. A. *Note and Mortgage*.  To secure repayment of the note, Plaintiffs executed a mortgage on the Property.  <u>See</u> Compl. ¶ 9; Ex. A. *Note and Mortgage.*[2]  Wells Fargo was named mortgagee in the mortgage and is the servicer for Plaintiffs' mortgage loan.  Ex. A. *Note and Mortgage*; Compl. ¶ 11. By 2012, Plaintiffs defaulted on their mortgage obligation.  Compl. ¶ 14.  Plaintiffs sought to obtain loss mitigation from Wells Fargo in an effort to cure their default.  Compl. ¶¶ 13–14.  As a result of Plaintiffs' discussions with Wells Fargo, Wells Fargo offered Plaintiffs the Repayment Plan dated March 28, 2013. Compl. ¶ 10.

While Plaintiffs characterize this document as a loan modification, the document is entitled "Full Repayment Plan." <u>See</u> Ex. B, *Repayment Plan*.  Through the Repayment Plan, Wells Fargo "agreed to accept a partial reinstatement in the amount of $5,190.96, to be submitted in the form of certified funds or a cashier's check…" <u>Id.</u>  Wells Fargo did not "waive[] [its] rights or remedies contained in the Note and/or Mortgage; and acceptance of any payments made by you will not be deemed to affect the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain due and owing." <u>Id.</u>  In addition, Plaintiffs agreed to "repay[] … past due amounts" through a "forbearance arrangement" <u>Id.</u>  The repayment plan required Plaintiffs to make 14 payments of $5,190.96 to Wells Fargo. <u>Id.</u>  Finally, the agreement provided that if Plaintiffs

---

[2]    Public documents recorded in the county registry of deeds are subject to judicial notice. <u>In re Colonial Mort. Bankers Corp.</u>, 324 F.3d 12, 19 (1st Cir. 2003).

3

"default on total reinstatement or the terms of this repayment agreement" foreclosure will resume. Id.  Plaintiffs allege that Defendants misrepresented the nature of the Repayment Plan and their obligations under it.  Plaintiffs claim that they fulfilled their obligation under the Repayment Plan but that Wells Fargo refused to honor the agreement.

In October 2013, U.S. Bank brought an action to foreclose upon the Property in the York District Court. Compl. ¶¶ 5, 20.  Plaintiffs answered the foreclosure complaint and asserted nine counterclaims.  Compl. ¶ 26.  In November 2014, U.S. Bank dismissed the foreclosure complaint and Plaintiffs dismissed their counterclaims without prejudice. Compl. ¶ 27.

### III.    ARGUMENTS AND AUTHORITIES

A.    <u>Motion To Dismiss Standard</u>.

The First Circuit uses "two steps" to evaluate the sufficiency of a complaint.  <u>Schatz v. Rep. State L'ship Comm.</u>, 669 F.3d 50, 55–56 (1st Cir. 2012).  "The first prong is to identify the factual allegation and to identify statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory."  <u>Schatz</u>, 669 F.3d at 55 (citing <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011)).  "A plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action."  <u>Id.</u>  Under the second prong, a court assesses the quality of the factual allegations and determines whether they "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Soto-Torres v. Fraticelli</u>, 654 F.3d 153, 159 (1st Cir. 2011) (quotation marks and citation omitted).  If a court can make such inferences, "the claim has facial plausibility."  <u>Ocasio-Hernández</u>, 640 F.3d at 12.  In essence, "[t]he make-or-break standard … is that the combined allegations, taken as true, must state a plausible, not a merely conceivable,

case for relief." <u>Soto-Torres</u>, 654 F.3d at 159 (citing <u>Sepúlveda-Villarini v. Dep't. of Educ. of P.R.</u>, 628 F.3d 25, 29 (1st Cir. 2010)).

B.    <u>Plaintiffs' Claim Under The Maine Fair Debt Collection Practices Act Fails As A Matter Of Law</u>.

Plaintiffs' claim under the Maine FDCPA fails for two primary reasons. First, Wells Fargo is not a "debt collector" as defined by the Maine FDCPA. Furthermore, even if Wells Fargo qualified as a debt collector, Plaintiffs allege that Wells Fargo violated the statute in 2013 when it failed to credit Plaintiffs' payment. However, the Maine FDCPA's one-year statute of limitations bars Plaintiffs' claim.

a.    *Wells Fargo Is Not A Debt Collector Under The Maine FDCPA.*

Wells Fargo is exempt from the Maine FDCPA because it originated the loan. Under the Maine FDCPA, a debt collector is "any person conducting business in this State, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 32 M.R.S. § 11002(6). A debt collector, however, is not a "person collecting or attempting to collect any debt owed or due, or asserted to be owed or due, to another to the extent that the activity ... [c]oncerns a debt which was originated by that person." 32 M.R.S. § 11003(7)(B). Wells Fargo originated the loan in 2004. Compl. ¶ 8. Because Wells Fargo originated the loan, its conduct, as a matter of law, does not come under the purview of the Maine FDCPA. See <u>Doyle v. HSBC Bank, Nevada, NA</u>, 2011 WL 4073168 (Me. Super. Ct. June 15, 2011) (finding that Maine FDCPA did not apply where "HSBC Bank extended credit to the plaintiff. HSBC Bank hired HSBC Card Services to collect payments.").

b.    *Plaintiffs' Claim Is Barred By The Maine FDCPA's One-Year Statute Of Limitations.*

Plaintiffs' claim under the Maine FDCPA is also time barred. The Maine FDCPA has a one-year statute of limitations. 32 M.R.S. § 11054(4) ("An action to enforce liability under this section shall be brought within one year from the date on which the violation occurs."); see also Kueter v. Chrysler Fin. Corp., No. CIV. 98-CV-234-B, 2000 WL 762230, at *2 (D. Me. Apr. 5, 2000) ("The Federal Fair Debt Collection Practices Act provides that '[a]n action to enforce any liability created by this subchapter may be brought ... within one year from the date on which the violation occurs.'" 15 U.S.C. § 1692k(d)). The Maine Fair Debt Collection Practices Act provides the same limitations period. See 32 M.R.S. § 11054(4)."). Here Plaintiffs' claim relates to the first payment of a March 28, 2013 Repayment Plan. As a result, Plaintiffs were required to file suit by March 28, 2014 to timely bring a claim under the Maine FDCPA. They failed to do so. Plaintiffs' Maine FDCPA claim is time barred.[3]

C.    Plaintiffs' Claim Under the Maine FCRA Fails Because Wells Fargo Is Not Subject To The Statute.

Defendants are not a "credit reporting agenc[y]" subject to liability under the Maine FCRA. The Maine FCRA limits liability to "credit reporting agencies." See 10 M.R.S. § 1310-C (discussing liability of "credit reporting agencies" for willful violations of the Maine FCRA); 10 M.R.S. § 1310-D (discussing liability of a "consumer reporting agency or user of information" for negligent violations of the Maine FCRA). Accord 10 M.R.S. § 1307 (stating that the purpose of the Maine FCRA is to "require **consumer reporting agencies** to adopt

---

[3]       Plaintiffs filed a counterclaim for violation of the Maine FDCPA in the foreclosure case. However, Plaintiffs dismissed that claim without prejudice in November 2014. Compl. ¶ 27. No tolling agreement was entered into or ordered by the Court. Therefore, Plaintiffs' Maine FDCPA claim was "not tolled by filing a complaint that is subsequently dismissed without prejudice." Jorge v. Rumsfeld, 404 F.3d 556, 563 (1st Cir. 2005) (quoting Chico–Vélez v. Roche Prods., Inc., 139 F.3d 56, 59 (1st Cir. 1998)); Aziz v. Orbital Scis. Corp., 165 F.3d 17 (4th Cir. 1998) ("A dismissal without prejudice does not toll the statutory period for filing an action."). Instead, the "dismissal of the original suit, even though labeled as without prejudice, nevertheless … sound[ed] the death knell for the plaintiff's underlying cause of action [because] the sheer passage of time preclude[d] the prosecution of a new action." Chico-Velez, 139 F.3d at 59. See also Jorge, 404 F.3d at 563. ("A voluntary dismissal without prejudice results in a *tabula rasa*. It renders the proceedings null and void and leaves the parties in the same position as if the action had never been prosecuted.").

reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner that is fair and equitable to the consumer, with regard for confidentiality, accuracy, relevancy and proper use of this information in accordance with the requirements of this chapter.") (emphasis supplied).  Under the Maine FCRA, a "credit reporting agency" is "a person that, for monetary fees, dues or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports or investigative consumer reports to 3rd parties." 10  M.R.S. § 1308.  Plaintiffs do not allege that Defendants are credit reporting agencies.  Instead they allege that Wells Fargo is the loan originator and servicer of the loan and U.S. Bank is the mortgagee.  Because Defendants are not credit reporting agencies, subject to the Maine FCRA, Plaintiffs' claim fails as a matter of law. Macfeat v. Countrywide Fin. Corp., 2005 WL 6000899 (Me. Super. Ct. Sept. 15, 2005) (applying previous version of the Maine FCRA to conclude that statute provision did not apply where Defendant was not a consumer reporting agency.).

D.    Plaintiffs' "Tort" Claim Fail Because There Is No Duty of Care In A Mortgagee/Mortgagor Relationship.

Plaintiffs' "tort" claim fails because Wells Fargo owes no duty of care to Plaintiffs. "[T]he general rule in Maine is that without more, a mortgagee-mortgagor relationship does not create a duty of care between a bank and a customer." Fogg v. Ocwen Loan Serv., LLC, No. 2:14-CV-454-GZS, 2015 WL 1565229, at *5 (D. Me. Apr. 8, 2015) (quoting Hamilton v. Federal Home Loan Mortg. Corp., No. 2:13-cv-00414-JAW, 2015 WL 144562, at *17 (D. Me. Jan. 12, 2015).  "Nor does a borrower-lender or creditor-debtor relationship, standing alone, establish the existence of a confidential relationship." Lariviere v. Bank of N.Y. as Tr., No. CIV.9-515-P-S, 2010 WL 2399583, at *6 (D. Me. May 7, 2010) report and recommendation

7

adopted, No. CIV.09-515-P-S, 2010 WL 2399556 (D. Me. June 11, 2010).  Likewise no "special

relationship" exists "as a matter of law, between loan servicers and borrowers/mortgagors."

Fogg, 2015 WL 1565229, at *6.

Plaintiffs allege that Wells Fargo maintained "special duty" to Plaintiffs as their loan

servicer. Compl. ¶ 80.  However, Plaintiffs' claim completely relates to Wells Fargo's conduct as

loan servicer.  These acts "fall squarely within the normal role of a lender" and do not create a

special relationship between a mortgagee/mortgagor and loan servicer/borrower.  Moore v.

Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (concluding that no

special duty of care was created between loan servicer and borrowers related to loss mitigation

and foreclosure efforts).  Because no duty of care exists, Plaintiffs' "tort" i.e. negligence claim,

fails as a matter of law.

E.     Plaintiffs Fail To Allege A Viable Claim For Wrongful Use Of Civil Proceedings.

Plaintiffs' claim for wrongful use of proceedings fails because Plaintiffs have not and

cannot allege that U.S. Bank lacked probable cause to bring the foreclosure action. [4]

> The tort of wrongful use of civil proceedings exists where (1) one initiates,
> continues, or procures civil proceedings without probable cause, (2) with a
> primary purpose other than that of securing the proper adjudication of the claim
> upon which the proceedings are based, and (3) the proceedings have terminated in
> favor of the person against whom they are brought.

Pepperell Trust Co. v. Mountain Heir Fin. Corp., 708 A.2d 651, 656 (Me. 1998) (citing 10

Restatement (Second) of Torts § 674.11); see also Beaulieu v. Bank of Am., N.A., No. 1:14-CV-

00023-GZS, 2014 WL 4843809, at *5–7 (D. Me. Sept. 29, 2014).  Here, Plaintiffs have failed to

plead that U.S. Bank lacked probable cause when it initiated the foreclosure action.

---

[4]     Furthermore, Plaintiffs do not allege that Wells Fargo instituted any civil proceeding against them.  The
claim, therefore, fails against Wells Fargo for failure to allege this necessary fact.

U.S. Bank possessed probable cause when it initiated the foreclosure action. "Probable cause is present if a party has 'a reasonable belief in the possibility that the claim may be held valid.'" First Tracks Invs., LLC v. Murray, Plumb & Murray, 2014 WL 7666378, *11 (Me. B.C.D. 2014) (quoting (Restatement (Second) of Torts § 674 cmt. e (1977)) (collecting other authorities).  Thus, "[t]o establish the absence of probable cause, the plaintiff must show that the defendant initiated the prosecution without reasonable grounds for believing that the party against whom the prosecution is initiated was guilty of the charged offense." Price v. Patterson, 606 A.2d 783, 785 (Me. 1992). "'[W]hile the person initiating civil proceedings cannot have a reasonable belief in the existence of the facts on which the proceedings are based if he knows the alleged facts are not true and his claim is based on false testimony, it is enough if their existence is not certain but he believes that he can establish their existence to the satisfaction of court and jury.'" First Tracks Invs., LLC,  2014 WL 7666378, *11  (quoting Restatement (Second) of Torts § 675 cmt. d.).  Indeed, "[m]any civil proceedings, in order to be effective, 'must be begun before all of the relevant facts can be ascertained to a reasonable degree of certainty.  To put the initiator of civil proceedings to a greater risk of liability would put an undesirable burden upon those whose rights cannot be otherwise effectively enforced.'" Id.  (quoting Restatement (Second) of Torts § 675 cmt. d.).

At its core, U.S. Bank initiated the foreclosure action upon Plaintiffs' admitted default on their mortgage loan.  See Comp. ¶ 14.  Probable cause exists under these circumstances.  See Shapiro v. Haenn, 222 F. Supp. 2d 29, 45–46 (D. Me. 2002) ("Defendant CNB knew that Plaintiff had defaulted on his final payment under the note and that the note was secured by the residence in Camden.  At the most basic level, therefore, Defendant CNB had probable cause to initiate a foreclosure action.").  Furthermore, even if U.S. Bank had no right to initiate the

foreclosure action because it failed to abide by a procedural rule required to initiate foreclosure proceedings, this Court has questioned whether procedural infirmities may undermine a party's probable cause for bringing an action.  See id. ("Plaintiff seeks to refocus the probable cause inquiry, however, by arguing that once Defendant CNB failed to provide him the notice required under 14 M.R.S.A. 6111, it no longer had probable cause to initiate the foreclosure.  As a preliminary matter, the Court is not convinced that the failure to follow a procedural requirement negates probable cause.").  Indeed, at least one Maine Superior Court judge has dismissed a wrongful use of civil proceedings claim notwithstanding that plaintiff had no right whatsoever to the funds sought. Nadeau v. People's United Bank, 2013 WL 3337018, *4 (Me. Super. Ct. 2013) (dismissing wrongful use of proceeding case where the prior court "determined that the Bank [the plaintiff in the prior lawsuit] had no interest in the … trust accounts and ordered that the funds be turned over immediately…"  The Court reasoned that "even though the Bank had no right to the trust accounts, the Bank initiated the civil lawsuit to collect on the commercial loan it made to Nadeau's law firm … [did] not establish wrongful use of civil proceedings as the Bank had the right to pursue a collection action…"  Id.

In this matter, it is undisputed that U.S. Bank had the right to initiate the foreclosure action upon Plaintiffs' default.  U.S. Bank's alleged failure to satisfy preconditions to invoke that right does not "negate" the right to begin with.  Shapiro, 222 F. Supp. 2d 29  at 46.  Because U.S. Bank had the legal right to initiate the foreclosure action, Plaintiffs have not, and cannot plead that U.S. Bank lacked probable cause.  Plaintiffs' wrongful use of civil proceeding claim fails as to Wells Fargo and U.S. Bank.

F.      Plaintiffs' UTPA Claim Fails Because Wells Fargo Is Exempt From The Statute.

Plaintiffs' claim under the UTPA fails because Wells Fargo's servicing conduct is exempt from the UTPA's scope under 9-B M.R.S § 244. Specifically, Plaintiffs claim that Wells Fargo, as loan servicer, made false or misleading statements while negotiating Plaintiffs' Repayment Plan. Compl. ¶¶ 89-90. While unfair and deceptive conduct is traditionally prohibited by the UTPA, 5 M.R.S § 207, "[t]he Maine legislature has specifically exempted financial institutions that are subject to the provisions of Chapter 24 from the coverage of the UTPA." Shapiro v. Haenn, 190 F. Supp. 2d 64, 69 (D. Me. 2002) (citing 9-B M.R.S § 244); see also Viola v. Fleet Bank of Maine, No. 95-141-P-DMC, 1996 WL 498390, at *4 (D. Me. Feb. 27, 1996) aff'd, 94 F.3d 640 (1st Cir. 1996); Bank of Am. N.A. v. MacDougall, 2013 WL 5510297, *1 (Me. Super. Ct. Aug, 5, 2013) (Bank of America exempt from UTPA); Danversbank v. Marshall, 2009 WL 1747882, slip op. at *2 (Me. Super. Ct. Mar 4, 2009) (explaining that financial institutions subject to 9-B M.R.S § 244 are "exempt from the provisions of Title 5, chapter 10" [also known as the UTPA].").[5]

While Plaintiffs plead that Wells Fargo is not subject to any exceptions to the UTPA, this allegation is a legal conclusion that must be ignored. United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v., 633 F.3d at 41. Plaintiffs make this legal conclusion because

---

[5]      In Viola the court explained that:

> Chapter 24 deals with anticompetitive or unfair practices, 9-B M.R.S. § 241, …. The legislature could rationally have concluded that, because Chapter 24 adequately regulates anticompetitive or unfair practices, financial institutions subject to Chapter 24 should be exempt from the MUTPA. Moreover, the exemption is part of a complex administrative scheme to regulate financial institutions. See 9-B M.R.S. § 111 (declaration of policy that financial institutions shall be supervised by Bureau of Banking in manner to assure strength, stability and efficiency of financial institutions, to assure reasonable and orderly competition, and to protect consumers against unfair practices by financial institutions that provide consumer credit).

Viola, 1996 WL 498390, at *4.

they cannot plead facts to establish that the UTPA applies to Wells Fargo.  For the UTPA to apply to Wells Fargo, Plaintiffs are required to plead that Wells Fargo is not "authorized to do business" in Maine. 9-B M.R.S § 244.  Plaintiffs concede that Wells Fargo is authorized to conduct business in Maine. Compl. ¶ 3 ("Wells Fargo is a foreign corporation with authority to do business in the State of Maine").  Nor could they allege otherwise.

To establish that the UTPA applies to Wells Fargo (because it is <u>not</u> authorized to do business in Maine) Plaintiffs must plead, subject to their Rule 11 obligations, that Wells Fargo is not "[o]rganized under provisions of federal law … and [does not] maintain[] a branch in this State."  M.R.S. 9-B, § 131.  Wells Fargo, however, is a national bank organized under the laws of the United States.  <u>See</u> <u>Truong v. Bank of Am., N.A.</u>, 717 F.3d 377, 386 (5th Cir. 2013) ("Wells Fargo [is a]  federally chartered bank[]…"); <u>Doran v. Selene Fin., LP</u>, 2013 WL 53840, at *2 (D. Minn. Jan. 3, 2013) ("Wells Fargo is a federally chartered bank…"); <u>Wells Fargo Asia Ltd. v. Citibank, N.A.</u>, 612 F. Supp. 351, 352 (S.D.N.Y. 1985) ("Wells Fargo Bank, National Association, a federally chartered bank based in San Francisco, California.").  Furthermore, Wells Fargo and its affiliates maintain at least two branches in Maine. <u>See</u> Ex. C, *Wells Fargo Home Mortgage Locations*.[6]  Because Wells Fargo is exempt from the UTPA, Plaintiffs' UTPA claim fails as a matter of law and must be dismissed.

---

[6]    This Court may take judicial notice of locations and geography.  "[G]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed. R. Evid. 201(b)…."  <u>United States v. Bello</u>, 194 F.3d 18, 23 (1st Cir. 1999) (quoting <u>United States v. Piggie</u>, 622 F.2d 486, 488 (10th Cir. 1980).  Courts have used this principle to take judicial notice of banking locations. <u>See</u> <u>Fobroy v. Video Only, Inc.</u>, 2014 WL 6306708, at *6 (N.D. Cal. Nov. 14, 2014) ("Even if defense counsel is not the proper party to authenticate the website printout in question, that U.S. Bank has several locations in the San Francisco Bay Area is a fact properly subject to judicial notice."); <u>Pilchesky v. United States</u>, 2008 WL 4452672, at *2 (M.D. Pa. Sept. 29, 2008) ("The Court has consulted local telephone and business directories and, finding that the accuracy of these sources cannot reasonably be questioned, takes judicial notice, pursuant to Federal Rule of Evidence 201, of the fact that Wachovia Bank, N.A. has a location at 101 N. Main Street in Scranton, Pennsylvania and that Community Bank, N.A. & First Liberty Bank Trust has a location at 1300 Wyoming Avenue in Scranton, Pennsylvania.").

G.    <u>Plaintiffs Fail To State a Claim For IIED.</u>

Wells Fargo's and U.S. Bank's conduct was not so extreme and outrageous to form the basis of an IIED claim. "Under Maine law, a claim for [IIED] has four elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;
> (3) the conduct of the defendant caused the plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.

<u>Beaulieu</u>, 2014 WL 4843809, at *7–8 (citing <u>Bratton v. McDonough</u>, 91 A.3d 1050, 1057–58 (Me. 2014)).    Resolution of an IIED claim is proper at the motion to dismiss stage. <u>See</u> <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 511 (1st Cir. 998) ("Under Maine's jurisprudence, a court properly may determine, as a matter of law, whether undisputed (or assumed) facts suffice to state a claim for intentional infliction of emotional distress."). Plaintiffs' claim that Defendants, by filing a foreclosure complaint 10 months after drafting the complaint and causing Plaintiffs to enter into the Repayment Plan for the purpose of receiving additional monies, caused them severe emotional distress.  Plaintiffs cannot meet their significant burden to plead a claim for IIED.

The allegations in this case are similar to the claims dismissed by this Court in <u>Beaulieu</u>, <u>Fogg</u>, and <u>James v. GMAC Mortg. LLC</u>, 772 F. Supp. 2d 307 (D. Me. 2011).  In <u>Beaulieu</u>, the plaintiffs alleged that "after he defaulted on his payments, [the defendant] proceeded to file a foreclosure action without first giving required notice to the V[eterans] A[dministration]." <u>Beaulieu</u>, 2014 WL 4843809, at *8.  This Court characterized the foreclosing mortgagee's conduct as "wrongful and illegal."   <u>Id.</u>   However, the Court concluded a "failed attempt at

foreclosure cannot be reasonably characterized as atrocious and utterly intolerable conduct sufficient to state an IIED claim." Id.; Campbell v. Machias Sav. Bank, 865 F. Supp. 26, 36 (D. Me. 1994) ("threats of foreclosure," "the filing of a criminal complaint," and "rude behavior" were insufficient to state an IIED claim). In Fogg, the plaintiffs brought an IIED claim based upon allegations that the loan servicer attempted to collect on a deficiency after a consent judgment in a previous foreclosure action. See Fogg, 2015 WL 1565229, at *7. The Fogg court refused to recognize that "wrongfully and illegally … send[ing] dunning notices, as well as filing a false report with credit agencies" was extreme and outrageous conduct. Lastly, in James, the court dismissed an IIED claim where the plaintiff alleged that his loan servicer's conduct caused duplicate homeowners insurance to be placed on the property, which then led to foreclosure. James, 772 F. Supp. 2d at 324.

Plaintiffs' allegation that Wells Fargo's conduct was "extreme and outrageous" ignores the pleaded facts and the purpose of the Repayment Plan. By offering the Repayment Plan, Wells Fargo provided Plaintiffs a means to become current. That that process failed is not extreme and outrageous behavior. Beaulieu, 2014 WL 4843809, at *8. Plaintiffs fail to state a claim for IIED.

H.    Defendants Are Entitled To A More Definite Statement Pursuant To Fed. R. Civ. P. 12(e) On Plaintiffs' Remaining Claims.

Wells Fargo and U.S. Bank are entitled to a more definite statement pursuant to Fed. R. Civ. P. 12(e) related to Plaintiffs' claims for late fees and costs (Count I), fraud-based claims (Counts IV–VI), breach of contract (Count VII), and punitive damages (Count XIII). A motion for a more definite statement is appropriate grounds to address pleading issues. U.S. ex rel. Estate of Cunningham v. Millennium Labs. of California, Inc., 713 F.3d 662, 664 (1st Cir. 2013) ("[A] Pleading deficiency is usually addressed by motion for a more definite statement pursuant

to Fed. R. Civ. P. 12(e)…"); <u>Brown v. Mabus</u>, 2015 WL 4133723, at *1 (D. Me. July 8, 2015) (Rule 12(e) motion functions to allow plaintiff another opportunity to "cohesively present his allegations in one document."). Here, the remaining claims do not put Wells Fargo or U.S. Bank on notice of their wrongdoing in violation of Fed. R. Civ. P. R. 8(a)(2).

      a.     *Plaintiffs Employ Group Pleading.*

Plaintiffs employ "group pleading" and therefore fail to place each defendant on notice of its wrongdoing.  Under First Circuit law, the Court must determine, "whether, *as to each defendant,* a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 48 (1st Cir. 2009) (emphasis in original).  This is impossible where Plaintiffs "indiscriminately grouping all of the individual defendants into one wrongdoing monolith." <u>United States, ex rel. Branhan v. Mercy Health Sys.</u> of SW. Ohio, 188 F.3d 510 (6th Cir. 1999)  (Clay, J., concurring in part and dissenting in part) (quoting <u>Lubin v. Sybedon Corp</u>., 688 F. Supp. 1425, 1443 (S. D. Cal. 1988)).  Thus where a complaint alleges fraud, like Plaintiffs', and contains multiple defendants, like Plaintiffs', "each defendant's role must be particularized with respect to their alleged involvement in the fraud." <u>Ford v. Dealer Computer Servs., Inc</u>., 1999 WL 1995026, at *3 (D. Me. Feb. 12, 1999) (quoting <u>Rhone v. Energy North, Inc</u>., 790 F. Supp. 353, 361 (D. Mass. 1991).  Plaintiffs' complaint fails to meet this criterion.

For example, in Count VI--alleging misrepresentation--Plaintiffs allege that "it was represented by *Defendants*…" Compl.¶ 37; <u>see also</u> ¶¶ 39-40 (alleging that "Defendants represented); Compl. ¶ 49. ("Defendants negligently represented to Plaintiffs…") (Count V-Negligent Misrepresentation); Compl. ¶  54 ("Defendants made material representation…") (Count VI-Fraud).  Because "the complaint also fails to delineate with specificity the role each

Defendant played in the alleged fraud [it[ fails to put each Defendant on notice of the precise misconduct with which [it] is charged.  Bailey v. Linsco/Private Ledger Corp., 136 F.R.D. 11, 14 (D. Me. 1991); L'Esperance v. HSBC Consumer Lending, Inc., 2012 WL 2122164, at *6 (D.N.H. June 12, 2012) (dismissing case where plaintiff failed to "sufficiently allege each defendant's role in the allegedly unlawful acts.").

        b.     *Plaintiffs Have Not Alleged The Existence Of A Contract Or Its Breach.*

Plaintiffs cannot establish that the Repayment Plan was a binding contract or that Defendants breached the Repayment Plan.  "A valid contract requires an offer, acceptance of that offer, a meeting of the minds and consideration." Suzman v. Crisp, 489 F. Supp. 2d 103, 107 (D. Me. 2007) (citation omitted).  Plaintiffs have not alleged that they accepted the contract in the manner required by Wells Fargo.  "An offeree may accept the offer by 'a manifestation of assent to the terms thereof ... in a manner invited or required by the offer.'" Parker v. Wakelin, 937 F. Supp. 46, 53 (D. Me. 1996) aff'd in part, rev'd in part, 123 F.3d 1 (1st Cir. 1997) (quoting Restatement § 50) (citing Ouellette v. Bolduc, 440 A.2d 1042, 1045 (Me. 1982)).  To accept the Repayment Plan, Plaintiffs were required to pay "$5,190.96" by "certified funds or a cashier's check "along with this fully executed agreement."  Plaintiffs do not allege that they accepted Wells Fargo's offer by executing the agreement by making payments in certified funds. Without alleging acceptance of the offer in the manner required by Wells Fargo, Plaintiffs' statement that a contract exists is a legal conclusion that must be ignored.  United Auto., Aerospace, Agr. Implement Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 41 (1st Cir. 2011).

Furthermore, Plaintiffs have not alleged a breach of the contract.  Under Maine law to allege a breach of contract claim, Plaintiffs must plead a "(1) breach of a material contract term; (2) causation; and (3) damages." Maine Energy Recovery Co. v. United Steel Structures, Inc.,

724 A.2d 1248, 1250 (Me. 1999); Schmid Pipeline Const., Inc. v. Summit Nat. Gas of Maine, Inc., 2015 WL 4643113, at *10 (D. Me. Aug. 4, 2015). Plaintiffs claim that Wells Fargo breached the Repayment Plan by "failing to accept and account for the modified payment as an on-time and correct monthly payment" and by "unjustifiably canceling the [l]oan modification." Compl. ¶¶ 60–61. The terms of the Repayment Plan do not establish that Wells Fargo breached the contract.[7] The Repayment Plan is not a loan modification. Plaintiffs, in a purposeful attempt to confuse the nature of the contract, plead that it is a "forebearance[sic] agreement" but then label it a "Loan Modification." Compl. ¶ 10. The Repayment Plan is not a loan modification and is instead titled "Full Repayment Plan" See Ex. B, *Repayment Plan*. Nothing in the Repayment Plan contemplates a permanent change in Plaintiffs' obligation under the mortgage loan. Galvin v. EMC Mortg. Corp., 2013 WL 1386614, at *5 (D.N.H. Apr. 4, 2013) (explaining that a repayment plan was not a modification where "[t]here [was] not the faintest suggestion that if [plaintiff] ma[de] all six payments, EMC will modify the terms of his Note.").

Instead, through the Repayment Plan, Wells Fargo "agreed to accept a partial reinstatement in the amount of $5,190.96, to be submitted in the form of certified funds or a cashier's check…" See Ex. B, *Repayment Plan*. Wells Fargo did not "waive[] [its] rights or remedies contained in the Note and/or Mortgage; and acceptance of any payments made by you will not be deemed to affect the acceleration of the Note and/or Mortgage in the event of default under the terms of this agreement and the remainder of the accelerated loan balance shall remain

---

[7]     The First Circuit has made clear that this Court may review the Repayment Plan in its evaluation of the motion to dismiss. See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 18 (1st. Cir. 1998). In Beddall, the Court explained that its "inquiry into the viability of … allegations should not be hamstrung simply because the plaintiff fails to append to the complaint the very document upon which *by her own admission* the allegations rest. Any other approach would seriously hinder recourse to Rule 12 motions, as a plaintiff could thwart the consideration of a critical document merely by omitting it from the complaint. We doubt that the drafters of the Civil Rules, who envisioned Rule 12(b)(6) motions as a swift, uncomplicated way to weed out plainly unmeritorious cases, would have countenanced such a result." Id. (emphasis in original).

due and owing." Id.  Furthermore, only upon the receipt of the certified funds (among other requirements) will Wells Fargo "hold legal action."  In addition, Plaintiffs agreed to "repay[] … past due amounts" through a "forbearance arrangement" Id.  The Repayment Plan required Plaintiffs to make 14 payments of $5,190.96 to Wells Fargo. Id.  Finally, the agreement provided that if Plaintiffs "default on total reinstatement or the terms of this repayment agreement" foreclosure will resume. Id.  Plaintiffs have not alleged that Defendants breached terms of the Repayment Plan.  Without these necessary facts establishing a breach, Plaintiffs' complaint does not allege a breach of contract.  Therefore, Defendants are entitled to a more definite statement to put them on notice on how they allegedly breached the Repayment Plan.

       c.     *Plaintiffs Have Not Alleged Fraud With Sufficient Particularity*.

      Plaintiffs have not pleaded their fraud-based claims with sufficient particularity.  The "core allegation" in Plaintiffs' fraud based claims is that "Defendants" made false statements regarding Plaintiffs' Repayment Plan, upon which they relied and suffered damages.  In other words, they charge fraud.  Where a plaintiff's "core allegations" "charge fraud", courts apply "Rule 9(b) expansively to cover associated claims."  N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) ("[O]ne might think that negligent misrepresentation and fiduciary duty were not on their face subject to Rule 9(b), but the case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud.").  Because Plaintiffs' fraud-based claims all stem from allegedly false representation regarding the Repayment Plan, Plaintiffs are required to comply with Rule 9(b).  Therefore, "at a minimum, Rule 9(b) requires that Plaintiffs specify 'the time, place, and content' of the allegedly false representations on which these claims are based." Enercon v. Glob. Computer Supplies, Inc., 675 F. Supp. 2d 188, 199 (D. Me. 2009) (quoting

United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007).  Plaintiffs fail to meet this burden.  They do not allege with any particularity the false statement, who made the false statement, and when it was made.  This, coupled with their group pleading, make it impossible for Wells Fargo or U.S. Bank to be on notice of their alleged fraudulent statements.  Wells Fargo and U.S. Bank are therefore entitled to a more definite statement under Rule 12(e).

       d.      *Unlawful Late Fees And Cost And Punitive Damages Are Not Causes Of Action.*

Defendants are entitled to a more definite statement because unlawful late fees and cost and punitive damages are not causes of action.  To state a cause of action, Plaintiffs must "identify the conduct of one or more specific defendants; she must also identify the statute, regulation, or other legally enforceable rule that has been violated by the conduct alleged." L'Esperance v. HSBC Consumer Lending, Inc., 2012 WL 345892, at *5 (D.N.H. Feb. 1, 2012). The current version of the complaint does not meet this standard.  "Punitive damages are not a separate and distinct cause of action but an element of damages that may be recovered on certain claims." Beaulieu, 2014 WL 4843809, at *12 (citing Frank v. L.L. Bean, Inc., 352 F. Supp. 2d 8, 13 (D. Me. 2005).  Furthermore, Plaintiffs have not identified any document or rule that would give rise to a cause of action for assessing unlawful late fees and costs.  As a result, Plaintiffs' claim suffers from a glaring pleading deficiency and a more definite statement under Fed. R. Civ. P. 12(e) is required.

CONCLUSION

For the reasons stated herein, this Court should grant Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim with respect to counts II, III, VIII, IX, X, and XI, grant Defendants' motion for a more definite statement with respect to Counts I,

19

IV, V, VI, VII, and XII., and grant Defendants any further or different relief this Court deems

equitable and just under the circumstances.

                              Respectfully submitted,

                              U.S. BANK, N.A. AS TRUSTEE; AND
                              WELLS FARGO BANK, N.A.,
                              By its attorneys,

                              _/s/ Morgan T. Nickerson_____
                              Morgan T. Nickerson (Maine Bar # 5525)
                              morgan.nickerson@klgates.com
                              **K&L GATES LLP**
                              State Street Financial Center
                              One Lincoln Street
                              Boston, MA 02111
                              (617) 261-3100
                              (617) 951-3175 (fax)
Dated: December 7, 2015

## CERTIFICATE OF SERVICE

        I, Morgan T. Nickerson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: December 7, 2015                    _/s/ Morgan T. Nickerson_____