## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| JULIE A. COTA AND WILLIAM A. COTA, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Docket no. 2:15-cv-486-GZS |
| v. | ) |
| | ) |
| U.S. BANK NATIONAL ASSOCIATION AND WELLS FARGO HOME MORTGAGE, INC., | ) |
| | ) |
| | ) |
| Defendants. | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND FOR A MORE DEFINITIVE STATEMENT

Before the Court is the Motion to Dismiss and for a More Definite Statement with Incorporated Memorandum of Law filed by Defendants U.S. Bank National Association ("U.S. Bank") and Wells Fargo Home Mortgage, Inc. ("Wells Fargo" and, together with U.S. Bank, "Defendants") (ECF No. 8) (the "Motion").  For the reasons explained herein, the Court GRANTS IN PART AND DENIES IN PART the Motion.

## I.     LEGAL STANDARD

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3).  The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiffs' favor.  <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012).  Under Rule 12(b)(6), the Court "may consider only facts and

documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl.
Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted).

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to
survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible
on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering a motion
to dismiss, the Court should "begin by identifying pleadings that, because they are no more than
conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679
(2009).  Plaintiffs must include enough facts supporting a claim for relief that "nudge[] their claims
across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  "If the factual
allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief
from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston,
657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see
also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory statements").  At this point in the
litigation, "the determination of whether an issue is trialworthy simply is not the same as the
determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v.
Maine, Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010) (denying motion
to dismiss a hostile work environment claim).

Under Rule 12(e), a defendant may move for a more definite statement if the complaint is
"so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ.
P. 12(e).  Rule 12(e) motions, however, are "not favored 'in light of the availability of pretrial
discovery procedures.'" Haghkerdar v. Husson Coll., 226 F.R.D. 12, 14 (D. Me.
2005) (quoting Cox v. Me. Mar. Acad., 122 F.R.D. 115, 116 (D. Me. 1988)).  "Such motions are

designed to strike at unintelligibility, rather than at lack of detail in the complaint and accordingly properly are granted only when a party is unable to determine the issues he must meet." Hawkins v. Kiely, 250 F.R.D. 73, 74 (D. Me. 2008) (internal quotations omitted).


## II.   FACTUAL BACKGROUND

For the purposes of this Motion, the Court considers the facts as alleged in the complaint filed by plaintiffs Julie A. Cota and William A. Cota ("Plaintiffs") in the Superior Court of the State of Maine in York County on October 22, 2015 (ECF No. 1-1) (the "Complaint").

Plaintiffs are the owners of the real property located at 8 Harrison Avenue, York, Maine 03909 (the "York Property"). (Compl. ¶¶ 4 & 6.) Plaintiffs executed a promissory note (the "Note") and a mortgage over the York Property (the "Mortgage") and delivered both instruments to Wells Fargo Bank, N.A. on July 12, 2004. (Compl. ¶¶ 8 & 9.) Commencing on that date and continuing at least until the date of the Complaint, Wells Fargo has acted as the servicer of the Note and Mortgage. (Compl. ¶ 11.)

Wells Fargo sent a notice of default and right to cure, dated December 17, 2012, to Plaintiffs. (Compl. ¶ 14.) Plaintiffs then entered into discussions and negotiations with Defendants, and executed a document described in the Complaint as the "Loan Modification"[1] on April 1, 2013.[2] (Compl. ¶¶ 10 & 14.) At least while these discussions and negotiations were

---

[1] The Court draws no legal conclusion about whether the "Loan Modification" was a legally binding contract or whether it did, in fact, modify the terms of the Note or the Mortgage. For the purposes of this Order, the Court assumes the truth of Plaintiffs' pleadings, and refers to the purported agreement between Plaintiffs and Defendants as the "Loan Modification" to maintain consistency with the pleadings.

[2] Defendants attached a letter agreement to the Motion as Exhibit B, signed by a "Home Preservation Specialist" associated with Wells Fargo, but not countersigned by Plaintiffs. (Mot. Ex. B (ECF No. 8-2) at PageID # 124-129.) Defendants contend that this is the document that Plaintiffs describe as the "Loan Modification." However, Plaintiffs dispute this contention, and maintain that the Loan Modification, as signed by the parties, is a different letter agreement. (Pl.'s Obj. to Mot. (ECF No. 9) at PageID # 135.) If the parties agreed that a particular copy of the Loan Modification provided to the Court was the authentic copy, then the Court could consider the contents of that copy in

ongoing, U.S. Bank was the owner of the Note and Mortgage. (Compl. ¶ 13.) Defendants represented to Plaintiffs that the Loan Modification would change the monthly payments of Plaintiffs' loan without negative financial consequences to Plaintiffs. (Compl. ¶ 37.) Plaintiffs allege further that they relied upon the terms of the Loan Modification and explanations provided by agents and employees of Defendants when they forewent their regular monthly mortgage payments by making payments under the Loan Modification. (Compl. ¶ 43.) However, Defendants did not credit the payment or payments under the Loan Modification as regular monthly payments, but rather placed such payment or payments in a "suspense" account. (Compl. ¶ 44.) Plaintiffs allege that Defendants intentionally misrepresented the terms and effect of the Loan Modification in order to obtain payments from Plaintiffs under the pretense that the payments would be credited as regular mortgage payments. (Compl. ¶ 46.)

Plaintiffs made the first payment required under the Loan Modification, but Wells Fargo did not credit Plaintiffs' Note and Mortgage account for such payment. (Compl. ¶¶ 15-16.) This payment was considered a late payment by Defendants, and late fees and costs were assessed. (Compl. ¶ 30.) The payment was reported as a late payment to three credit reporting agencies. (Compl. ¶ 35.) Wells Fargo subsequently refused to accept any other payments under the Loan Modification. (Compl. ¶ 17.) Defendants ultimately canceled the Loan Modification, though Plaintiffs assert that the terms of the Loan Modification did not provide for its cancellation by Defendants "at any time." (Compl. ¶¶ 61 & 41.)

---

connection with its ruling on the Motion. See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to . . . a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). However, as the parties have not agreed upon an authentic copy of the Loan Modification, and the Court lacks a foundation for concluding that Defendants' Exhibit B is such an authentic copy, the Court does not consider the contents of this Exhibit for the purposes of deciding the Motion.

Defendants commenced a civil action to foreclose on the York Property on October 18, 2013 without providing a new notice of default reflecting the payments made by Plaintiffs under the Loan Modification.  (Compl. ¶ 20.)  Defendants' complaint in the foreclosure action did not make any reference to the Loan Modification or to payments made by Plaintiffs under the Loan Modification.  (Compl. ¶¶ 22-23.)  Plaintiffs assert that the primary purpose of the foreclosure action was "to collect additional sums of money from Plaintiffs upon the false pretext that Defendants agreed to a loan modification." (Compl. ¶ 67.)  On November 14, 2014, the foreclosure action was dismissed without prejudice by stipulation of the parties.  (Compl. ¶ 27.)

Plaintiffs filed the present litigation in the Superior Court of the State of Maine in York County.  The suit was removed to this Court by Defendants.  (Notice of Removal (ECF No. 1) at PageID # 1.)  As of the date of the filing of the Complaint, Plaintiffs remained the owners of the York Property.  (Compl. ¶ 6.)

## III.   DISCUSSION

The Complaint contains twelve separate claims, eleven against both Defendants and one against Defendant Wells Fargo: unlawful late fees and costs (Count I), violation of the Maine Fair Debt Collection Practices Act (Count II), violation of the Maine Fair Credit Reporting Act (Count III), intentional misrepresentation (Count IV), negligent misrepresentation (Count V), fraud (Count VI), breach of contract (Count VII), wrongful use of civil proceedings without probable cause (Count VIII), intentional infliction of emotional distress (Count IX), tort as to Defendant Wells Fargo (Count X), violation of the Maine Unfair Trade Practices Act (Count XI), and punitive damages (Count XII).  In the Motion, Defendants seek the dismissal of Counts II, III, VIII, IX, X, and XI and a more definite statement of Counts I, IV, V, VI, VII, and XII.  The Court addresses

each of the twelve counts below.  For the reasons set forth below, the Court GRANTS the Motion with respect to Counts II, III, VIII, IX, and X, and DENIES the Motion with respect to Counts I, IV, V, VI, VII, XI, and XII.

### A. Count I: Unlawful Late Fees and Costs

Plaintiffs allege in Count I that Defendants "charged unlawful late fees and costs for a late payment that were [sic] not late."  (Compl. ¶ 30.)  Defendants seek a more definite statement, arguing that Plaintiffs' claim for unlawful late fees and costs is not a cause of action, and that "Plaintiffs have not identified any document or rule that would give rise to a cause of action for assessing unlawful late fees and costs."  (Mot. at PageID # 91.)

Defendants are correct that the Complaint's pleadings concerning Count I lack great specificity as to Plaintiffs' theory of recovery, but they are incorrect in their conclusion that an order of a more definite statement under Rule 12(e) is the appropriate procedural response.  Rule 12(e) is disfavored precisely because pretrial discovery procedures readily provide Defendants with the opportunity to obtain the greater detail they seek.  See Haghkerdar, 226 F.R.D. at 14; see also Leahy-Lind v. Maine Dept. of Health and Human Services, 2014 WL 4681033, at *23 (D. Me. Sept. 19, 2014) (denying a Rule 12(e) motion and observing that "the parties will shortly have at their disposal the many methods of available discovery to both flesh out and nail down the details surrounding the claims").

The Court DENIES the Motion as to Count I.

### B. Count II: Violation of the Maine Fair Debt Collection Practices Act

Plaintiffs allege in Count II that "Defendant . . . attempted collection of a fraudulent claim in violation of the Maine Fair Debt Collection Practices Act."  (Compl. ¶ 33.)  The Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §§ 11001 et seq. (the "MFDCPA") specifies certain

practices in which "debt collectors" are prohibited from engaging.  32 M.R.S.A. § 11013. Defendants seek the dismissal of Count II, arguing that neither U.S. Bank nor Wells Fargo falls within the statutory definition of a "debt collector."

The MFDCPA generally defines a "debt collector" as a person or entity "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. at § 11002(6).  Excluded is "[a]ny person whose collection activities are confined to and directly related to the operation of a business other than that of a debt collector" and "[a]ny person collecting or attempting to collect any debt owed or due, or asserted to be owed or due, to another to the extent that the activity . . . [c]oncerns a debt which was not in default at the time it was obtained by that person."  Id. at § 11003(8) & (7).  The MFDCPA further provides that, notwithstanding the foregoing, "'debt collector' includes any creditor who, in the process of collecting the creditor's own debts, uses any name other than the creditor's that would indicate that a 3rd person is collecting or attempting to collect these debts." Id. at § 11002.

Courts analyzing the MFDCPA and the analogous provisions of the federal Debt Collection Practices Act have held that loan servicers who take on loans only after they are in default may fall under the definition of "debt collector."  See, e.g., Bridge v. Ocwen Federal Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012); Hamilton v. Fed. Home Loan Mortg. Corp., 2014 WL 4594733, at *18–*19 (D. Me. Sept. 15, 2014); Yarney v. Ocwen Loan Servicing, LLC, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013) (explaining that "mortgage servicers are considered debt collectors under the [federal Debt Collection Practices Act] if they became servicers after the debt they service fell into default").

In the Complaint, Plaintiffs do not allege that either of the Defendants engaged in the activities that fall within the statutory definition of a "debt collector."  To the contrary, the

Complaint asserts that Wells Fargo serviced Plaintiffs' loan at all times since the York Property was first encumbered by the Mortgage, and U.S. Bank is alleged to be the "owner of the Note and Mortgage." (Compl. ¶¶ 11 & 13.) A loan servicer that was "substituted" following a mortgage default may be a "debt collector," Beaulieu v. Bank of America, N.A., 2014 WL 4843809, at *12 (D. Me. Sept. 29, 2014), but the Complaint expressly excludes that possibility.

Plaintiffs argue that Defendants may still be liable under the MFDCPA because Defendants, as creditors, used the name "Wells Fargo Home Mortgage," which indicated that a third person was attempting to collect the debt. (Pls.' Obj. to Mot. (ECF No. 9) at PageID # 138.) It is facially implausible that Wells Fargo Home Mortgage could have indicated to Plaintiffs that a third person was attempting to collect mortgage payments when it used its own trade name. Neither have Plaintiffs stated a plausible case that the mortgage holder, U.S. Bank, could have made such a false indication when the same loan servicer was engaged for the duration of the existence of the Mortgage.

Plaintiffs have failed to state a claim against either Defendant as a "debt collector" under the MFDCPA. Accordingly, the Court GRANTS the Motion as to Count II.

C. Count III: Violation of the Maine Fair Credit Reporting Act

Plaintiffs allege that Defendants[3] violated the Maine Fair Credit Reporting Act (the "MFCRA") by falsely reporting an on-time modified mortgage payment as a "late" payment to "the three major credit reporting agencies . . . ." (Compl. ¶ 35.) The MFCRA provides for a private cause of action against a "consumer reporting agency" or a "user of information." See 10 M.R.S.A. § 1310-C & D. Plaintiffs do not allege in the Complaint that either Defendant was a "consumer reporting agency" or a "user of information," but rather that Defendants provided false

---

[3] Plaintiffs do not specify which Defendants allegedly reported an on-time payment as "late." (See Compl. ¶ 35.)

information to reporting agencies. (Compl. ¶ 35.) The MFCRA does not contain provisions on the furnishers of information to reporting agencies, though it does incorporate by reference the obligations imposed under the federal Fair Credit Reporting Act. 10 M.R.S.A. § 1309.

The federal Fair Credit Reporting Act, 15 U.S.C. § 1681 s-2(b), obligates those who furnish reports to credit reporting agencies to refrain from reporting inaccurate information and to undertake "specific duties in the event of a dispute over furnished information." Chiang v. Verizon New England Inc., 595 F.3d 26, 35 (1st Cir. 2010). For furnisher liability to arise in connection with a report of information, however, a consumer must dispute that report with the relevant credit reporting agency, and the furnishing person must then receive notice from the reporting agency that the consumer in question has disputed the report. Id. Plaintiffs have made no allegations regarding the fulfillment of these statutory preconditions to furnisher liability. See Hamilton, 2014 WL 4594733 at *22 (dismissing a furnishing-based claim where the plaintiff failed to allege satisfaction of statutory conditions in the complaint).

In their response brief, Plaintiffs identify an additional theory of recovery related to Defendants' reporting of Plaintiffs' payment information. Plaintiffs cite the MFDCPA, which prohibits a "debt collector" from "report[ing] solely in its own name any credit or debt information to a consumer reporting agency . . . ." 32 M.R.S.A. § 11013(4). According to Plaintiffs, this provision supports the conclusion that they have stated a claim in Count III that must survive the Motion. (Pls.' Obj. to Mot. (ECF No. 9) at PageID # 140.) As discussed above, however, Plaintiffs have failed to adequately allege that Defendants are "debt collectors" under the MFDCPA, and so Defendants cannot bear liability under this theory.

Plaintiffs have failed to state a claim under the MFCRA, the provisions of the federal Fair Credit Reporting Act incorporated by reference into the MFCRA, or Section 11013(4) of the MFDCPA.  Therefore, the Court GRANTS the Motion as to Count III.

D. Counts IV-VI: Intentional Misrepresentation, Negligent Misrepresentation, and Fraud

Plaintiffs allege Defendants are liable for making misrepresentations upon which Plaintiffs detrimentally relied under a theory of intentional misrepresentation (Count IV), negligent misrepresentation (Count V), and fraud (Count VI).  (Compl. ¶¶ 36-56.)  Defendants seek a more definite statement of the pleadings pertaining to these counts.

Each of these causes of action is supported by certain key allegations in the Complaint: that Defendants made misrepresentations to Plaintiffs, that those misrepresentations were made intentionally, recklessly, and/or negligently, and that Plaintiffs actually relied upon the misrepresentations to their detriment.  See Rand v. Bath Iron Works Corp., 832 A.2d 771, 773-774 (Me. 2003) (setting forth the elements of intentional misrepresentation and negligent misrepresentation causes of action under Maine state law).  Consequently, the Court considers Counts IV-VI, and Defendants' objections to the sufficiency of the pleadings for these counts, together.

Defendants argue that the pleadings supporting these causes of action are impermissibly made as "group pleadings" that fail to delineate the particular allegedly wrongful acts of each Defendant.  Plaintiffs have asserted that certain actions relating to the alleged misrepresentations were taken by Wells Fargo specifically, while other actions were taken by "Defendants" collectively.  (Compare Compl. ¶¶ 14-19, with Compl. ¶¶ 37-47.)

The Complaint sets forth allegations against both Defendants that make out the elements of intentional misrepresentation, negligent misrepresentation, and fraud.  (Compl. ¶¶ 37-47.)

These allegations, taken together, comply with the First Circuit's instruction that, to survive a motion to dismiss, pleadings should be "*as to each defendant* . . . sufficient to state a claim on which relief can be granted." Sanchez v. Periera-Catillo, 590 F.3d 31, 48 (1st Cir. 2009) (emphasis in original).  On the limited record before the Court, it is plausible that each Defendant engaged in the actions attributed to "Defendants" in the Complaint.  See Zond, Inc. v. Fujitsu Semiconductor Ltd., 990 F. Supp. 2d 50, 53 (D. Mass. 2014) (noting that "group pleadings are not, prima facie, excluded by Rule 8(a)" and finding that pleadings are insufficient "where it is entirely implausible or impossible for the grouped defendants to have acted as alleged." (internal quotation omitted)).  Either Defendant, or both Defendants, may argue at a later stage in the litigation that Plaintiffs cannot make the required evidentiary showing as to the elements of one or more of these claims.  However, the Court finds no basis for granting relief under Rule 12(e) because of the complaint's references to plural "Defendants."

Defendants also argue that the Complaint fails to satisfy the heightened pleading requirement that a plaintiff "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "The particularity requirement means that a complaint must specify the time, place, and content of an alleged false representation.  Conclusory allegations and references to plans and schemes are not sufficient."  U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 731 (1st Cir. 2007) (internal quotation and citations omitted).  Defendants argue that Plaintiffs have failed to allege what the false statements were, who made them, or when they were made.  (Mot. at PageID # 90-91.)

Plaintiffs have, in fact, pleaded the factual predicates of fraud with sufficient particularity. Plaintiffs have alleged that Defendants represented that the Loan Modification would change the monthly payment amounts of Plaintiffs' loan without any negative financial consequences.

(Compl. ¶ 37.)   Plaintiffs state that the "discussions and negotiations concerning the Loan Modification" occurred following their receipt of a notice of default dated December 17, 2012, and that the statements were inducements to enter into the Loan Modification that Plaintiffs signed on April 1, 2013.  (Compl. ¶¶ 14 & 43.)  The Complaint also states that Defendants' representations to Plaintiffs were false.  (Compl. ¶ 39-40 & 45-46.)

The Complaint's pleadings concerning Plaintiffs' misrepresentation and fraud claims are intelligible and put each Defendant on notice of the issues it must prepare to litigate.  The Complaint also satisfies the heightened pleading requirement for fraud set forth in Rule 9(b).  Therefore, the Court DENIES the Motion as to Count IV, Count V, and Count VI.

E.  Count VII: Breach of Contract

Plaintiffs allege that the "Loan Modification is a contract" and that Defendants breached this contract by "failing to accept and account for the modified payment" and "unjustifiably canceling the Loan Modification."  (Compl. ¶¶ 58 & 60-61.)  Defendants seek a more definite statement of the pleadings in connection with Plaintiffs' breach of contract claim, asserting that Plaintiffs have failed to allege either that a contract to modify or supplement the Note and Mortgage was formed between Plaintiffs and Defendants or that any such contract, even if formed, has been breached.

Defendants have not correctly characterized the allegations put forward by Plaintiffs in the Complaint.  Although the Complaint does not utilize the contractual terms of art of "offer," "acceptance," and "consideration," the pleadings describe a purported negotiation that resulted in the Plaintiffs executing and delivering the Loan Modification, and further describe the attempts by Plaintiffs to perform their obligations under the Loan Modification.  (Compl. ¶¶ 10 & 15.)  Further,

Plaintiffs allege a breach of the Loan Modification when they assert that "Wells Fargo refused to accept any other payments as provided in the Loan Modification." (Compl. ¶ 17.)

Defendants base their contract formation and breach arguments on particular terms of the Loan Modification. (Mot. at PageID # 89-90.) However, the record properly before the Court does not presently include an authenticated copy of the Loan Modification. The Court cannot consider the contents of what Defendants unilaterally assert, over Plaintiffs' objection, is an authentic copy of the Loan Modification. Rather, the Court must look to the allegations set forth in the Complaint. In the Court's assessment, the pleadings provide adequate detail to put Defendants on notice of Plaintiffs' breach of contract claim, and the pleadings are intelligible. No order of additional pleadings is appropriate under these circumstances.

Because the Complaint adequately alleges a plausible breach of contract action, the Court DENIES the Motion as to Count VII.

### F. Count VIII: Wrongful Use of Civil Proceedings without Probable Cause

"The tort of wrongful use of civil proceedings exists where (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought." Pepperell Trust Co. v. Mountain Heir Fin. Corp., 708 A.2d 651, 656 (Me. 1998). In the Complaint, Plaintiffs allege that Defendants lacked probable cause to bring the foreclosure action because they knew or should have known that the notice of default pursuant to which the foreclosure was instituted was inaccurate and legally defective. (Compl. ¶ 69.) Plaintiffs further allege that the primary purpose of Defendants' foreclosure action was to "collect additional sums of money from Plaintiffs upon the false pretext that Defendants agreed to a loan modification." (Compl. ¶ 67.)

"To establish the absence of probable cause, the plaintiff must show that the defendant initiated the prosecution without reasonable grounds for believing that the party against whom the prosecution is initiated was guilty of the charged offense." Price v. Patterson, 606 A.2d 783, 785 (Me. 1992).  In Nyer v. Carter, the Law Court found that the underlying action was instituted without probable cause where the prosecuting attorney "[o]bviously overlooked" that the governing statute had "no application by its express terms" to the case.  367 A.2d 1375, 1377 (Me. 1977).  After a motion to dismiss was filed, "The attorney, apparently recognizing that his complaint had not stated a cause of action, immediately dismissed the complaint with prejudice." Id.

Defendants deny that the facts as alleged by Plaintiffs describe a civil action brought without probable cause.  Defendants insist that Plaintiffs had received notice of their default and, by their own admission, entered into negotiation of the Loan Modification following the receipt of the notice.  (Mot. at PageID # 81-82.)  On the other hand, Plaintiffs insist that they have sufficiently alleged that the foreclosure action was obviously lacking in probable cause.  While the record is not as clear as the record in Nyer that this civil action was instituted without probable cause, the Court assumes that Plaintiffs have sufficiently alleged this first element of the cause of action.  However, Plaintiffs have failed to plausibly allege a "primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based." Pepperell Trust Co., 708 A.2d at 656.

This Court in Beaulieu considered the possible bases by which a plaintiff could allege improper purpose for a foreclosure action that, as here, had been dismissed without prejudice. 2014 WL 4843809 at *5-*6.  The Court referred to the Restatement (Second) of Torts to identify two situations which might apply.  Id.  First, a law suit lacks a proper purpose where it is initiated

because of "hostility or ill will." Restatement (Second) of Torts § 676.  Second, a proper purpose may be lacking where a lawsuit is initiated and the person initiating the lawsuit is aware that the claim lacks merit.  Restatement (Second) of Torts § 676; <u>Nyer</u>, 367 A.2d at 1379 (stating that "[t]he groundlessness of the suit may in many instances be so obvious and palpable, that the existence of malice may be inferred from it"); <u>see also</u> <u>Tuttle v. Raymond</u>, 494 A.2d 1353, 1361 (Me. 1985) (providing that an improper purpose "exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff" or "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied").

Plaintiffs insist that Defendants' primary purpose in filing the foreclosure action was to collect additional money by maintaining that Defendants agreed to a loan modification and, alternately, that the foreclosure action was so obviously groundless that Defendants' malice can be inferred from the mere fact that the action was prosecuted.  However, the pleadings are not sufficient to satisfy either the "hostility or ill will" test or the "inferred malice" test.  First, the Complaint fails to assert any facts that would evidence Defendants' hostility or ill will towards Plaintiffs.  The allegation that Defendants instituted the foreclosure action to obtain more money in connection with the Loan Modification contains, in itself, no plausible allegation of hostility.

Plaintiffs' argument that malice can be inferred from the foreclosure action's groundlessness fares no better.  The parties dispute the procedural soundness and substantive issues of the foreclosure action, which was dismissed without prejudice by mutual stipulation. (Compl. ¶ 27.)  The merits of that action have not been resolved, nor did any factfinder pass judgment on whether Defendants had satisfied the notice requirements under the Mortgage before instituting the suit.  Nothing in this record indicates that the "groundlessness" of the foreclosure

action was so apparent and palpable that an improper purpose can be inferred from its mere existence.

Plaintiffs have essentially restated the allegations pertinent to their breach of contract and misrepresentation claims and attempted to repurpose these allegations to fit the discrete elements of a wrongful use of civil proceedings claim.  However, the Court concludes that this attempt does not amount to a plausible claim for wrongful use of civil proceedings and GRANTS the Motion as to Count VIII.

   G.  <u>Count IX: Intentional Infliction of Emotional Distress</u>

Under Maine law, a claim for intentional infliction of emotional distress ("IEDD") has four elements:

(1) The defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;

(2) The conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;

(3) The conduct of the defendant caused the plaintiff's emotional distress; and

(4) The emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.

<u>See</u> <u>Bratton v. McDonough</u>, 91 A.3d 1050, 1057-58 (Me. 2014) (citing <u>Lyman v. Huber</u>, 10 A.3d 707 (Me. 2010)).  The Court "properly may determine, as a matter of law, whether undisputed (or assumed) facts suffice to state a claim for intentional infliction of emotional distress." <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 511 (1st Cir. 1998) (citing <u>Gray v. State</u>, 624 A.2d 479, 484 (Me. 1993)).

Assuming the truth of the facts alleged in the Complaint, Plaintiffs have not made allegations sufficient to support the second or the fourth prong of the IIED claim. Plaintiffs allege that Defendants' conduct in threatening a foreclosure action, using the threat of such action to induce Plaintiffs to enter into the Loan Modification in order to obtain additional cash payments from Plaintiffs, and in ultimately filing the foreclosure action, meet the legal standard of conduct "so extreme and outrageous as to exceed all possible bounds of decency." Bratton, 91 A.3d at 1058. While Plaintiffs have alleged unsavory and perhaps legally actionable conduct, they have not satisfied the high bar of alleging conduct that could be "reasonably characterized as atrocious and utterly intolerable." See Beaulieu, 2014 WL 4843809 at *8 (finding that "wrongful and illegal" filing of a foreclosure action against a military veteran without giving required notice to the Veterans Administration that caused "understandable emotional distress" was insufficient to state an IIED claim); Campbell v. Machias Sav. Bank, 865 F. Supp. 26, 36 (D. Me. 1994) (finding that "threats of foreclosure," "the filing of a criminal complaint," and "rude behavior" were insufficient to state an IIED claim).

Furthermore, even if the allegations in the Complaint described conduct satisfying the second prong of the IIED cause of action, Plaintiffs have failed to satisfy the pleading requirements for the fourth prong. Under Iqbal, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," are not adequate to plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 663. The Complaint's allegations concerning Plaintiffs' emotional distress are limited to the mere assertion that "[a]s a direct result of the conduct of Defendants . . . Plaintiffs suffered severe emotional distress." (Compl. ¶ 77.) The Complaint does not set forth facts that allow the Court to reasonably infer that Plaintiffs may have suffered the severe distress required for an IIED claim.

17

Rather, it simply recites portions of the fourth element of the IIED cause of action in plainest conclusory form.

The Court concludes that the Complaint fails to state a claim for IIED and GRANTS the Motion as to Count IX.

H.  <u>Count X: Tort as to Defendant Wells Fargo</u>

Plaintiffs claim that Wells Fargo violated a "special relationship" of "trust and confidence" by dishonestly negotiating, instituting, and servicing the Loan Modification.  (Compl. ¶¶ 81-84.) Defendant Wells Fargo argues that Maine law does not impose a special duty on mortgagees or loan servicers, and that as a consequence, Maine law does not recognize a special cause of action in tort arising out of the relationship between Wells Fargo and Plaintiffs.

Wells Fargo is correct.  Maine law does not recognize a special duty of care between a mortgagee and a mortgagor, or between a loan servicer and a borrower.  <u>See</u> <u>Ramsey v. Baxter Title Co.</u>, 54 A.3d 710 (Me. 2012); <u>Camden Nat'l Bank v. Crest Constr., Inc.</u>, 952 A.2d 213 (Me. 2008); <u>see also</u> <u>Fogg v. Ocwen Loan Servicing, LLC</u>, 2015 WL 1565229, at *5-6 (D. Me. Apr. 8, 2015); <u>Hamilton</u>, 2014 WL 4594733 at *11.  Plaintiffs do not cite to any case law indicating that the Law Court has adopted a rule identifying a relationship of "trust and confidence" between loan servicers and borrowers and imposing a corresponding fiduciary duty on loan servicers.  Rather, they argue that, as a matter of public policy, this Court should adopt such a rule.

The Court, in keeping with the jurisprudence of the Law Court and the decisions rendered in the District of Maine, declines to identify a new cause of action under Maine law.  Therefore, the Motion is GRANTED as to Count X.

I.   Count XI: Violation of the Maine Unfair Trade Practices Act

Plaintiffs argue that Defendants engaged in unfair, fraudulent, and/or deceptive practices that constitute "unlawful acts and conduct" under the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205 et seq. (the "UTPA").  The UTPA generally prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  5 M.R.S.A. § 207.  Maine law exempts "financial institutions" from the provisions of the UTPA.  9-B M.R.S.A. § 244.  The term "financial institution" is defined in relevant part as a "Commercial bank, savings bank, savings and loan association or similar institution that is organized under provisions of federal law or laws of another state and maintains a branch in [the State of Maine]  . . . ."  9-B M.R.S.A. § 131(17-A).  Defendants argue that they are both "financial institutions" and urge the Court to accordingly dismiss Count XI.

Plaintiffs have adequately pleaded facts supporting the elements of a UTPA claim, and they have not pleaded additional facts that would support the conclusion that the Defendants necessarily fall within the scope of the "financial institution" exemption.  Plaintiffs have identified Defendant U.S. Bank as "a foreign corporation doing business in Maine . . ." and Defendant Wells Fargo as "a foreign corporation with authority to do business in the State of Maine as a foreign corporation . . . ."  (Compl. ¶¶ 2-3.)  The Complaint does not make any further assertions regarding the nature of the business that either Defendant conducts, and does not describe either Defendant as a "bank."

Nonetheless, Defendants assume that they should be considered exempt financial institutions unless Plaintiffs affirmatively plead otherwise.  (Mot. at PageID # 83-84.)  Contrary to Defendants' argument, this is not consistent with Plaintiffs' "Rule 11 obligations."  (Id. at PageID # 84.)  Furthermore, the cases cited by Defendants serve only to demonstrate why dismissal is not

appropriate on these pleadings.  In Shapiro v. Haenn, this Court dismissed a claim under the UTPA where the plaintiff had alleged in his complaint that the defendant was "organized under the laws of the State of Maine engaged in the business of banking."  190 F. Supp. 2d 64, 69 (D. Me. 2002).  Similarly, in a recent Maine state court order, a UTPA claim was dismissed where the claimant "agree[d] that [Bank of America N.A.] is a financial institution authorized to do business in Maine."  Bank of America N.A. v. MacDougall, 2013 WL 5510297, at *1 (Me. Super. Aug. 5, 2013).   In the present case, in contrast, no facts alleged in the Complaint permit the Court to conclude that Defendants are "financial institutions," and Plaintiffs have not conceded the point.

In their reply brief, Defendants focus in particular on Wells Fargo, arguing that it is a "division" of Wells Fargo Bank, N.A.  (Defs.' Reply Br. Supp. Mot. (ECF No. 11) at PageID # 156-158.)  Defendants attached a copy of the agreement of merger by which Defendants assert that Wells Fargo ceased to exist as a legal entity separate and distinct from Wells Fargo Bank, N.A., certified by the Secretary of State of the State of California.  (Defs.' Reply Br. Supp. Mot., Ex. A (ECF No. 11-1) at PageID # 166-171.)  Even if the Court were to take judicial notice of this agreement of merger as a publicly filed document and were to conclude that Wells Fargo lacks a legal personality distinct from Wells Fargo Bank, N.A., Defendants have still not explained how, on the record, the Court can conclude as a matter of law that each of the Defendants is a "financial institution."

On a more developed factual record, Defendants may well be able to establish that the "financial institution" exemption applies.  However, based on the allegations in the Complaint, the Court DENIES the Motion as to Count XI.

J.   Count XII: Punitive Damages

Plaintiffs have pleaded that "Defendants' conduct amounting to fraud was malicious or so outrageous that malice may be implied justifying an assessment of punitive damages."  (Compl. ¶ 100.)   Defendants argue that Plaintiffs should provide more definite pleadings of Count XII because the existing pleadings fail to state a distinct cause of action.

As Defendants correctly assert in the Motion, punitive damages are a kind of remedy, but do not constitute a separate cause of action.  See South Port Marine, LLC v. Gulf Oil Ltd. P'ship, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages . . . do not constitute a separate cause of action, but instead form a *remedy* available for some tortious or otherwise unlawful acts." (emphasis in the original)).  However, Plaintiffs are free to pursue punitive damages so long as they continue to assert a claim for which punitive damages is an available remedy.  As discussed above, the Court has denied the Motion as it pertains to Plaintiffs' claims for intentional misrepresentation (Count IV) and fraud (Count VI), and these causes of action may result in a punitive damages award under Maine law if Plaintiffs ultimately prove by clear and convincing evidence that Defendants acted with malice.  See Tuttle, 494 A.2d at 1354.

Defendants have not asked for the dismissal of Count XII, but rather seek a more definitive statement of the pleadings.  The pleadings are not unintelligible, nor do they fail to place Defendants on notice of the issues Plaintiffs have raised.  Therefore, more definite pleadings are not required under Rule 12(e), and the Court DENIES the Motion as to Count XII.


IV.   **CONCLUSION**

For the reasons just stated, Defendants' Motion (ECF No. 8) is GRANTED IN PART AND DENIED IN PART.  Counts II, III, VIII, IX, and X shall be dismissed for failure to state a claim.

However, the case shall proceed as to Counts I, IV, V, VI, VII, XI, and XII of the Complaint, with no more definite pleadings required.

     SO ORDERED.

                                   /s/ George Z. Singal
                                   United States District Judge

Dated this 10th day of March, 2016.